OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The jury found that the defendant Norman had attacked and injured the plaintiff outside Poor Richard’s Saloon. Norman’s companion, the codefendant June, was convicted of assault and battery in an earlier criminal trial. He did not appear at the trial of this civil action and the court directed a verdict against him on the issue of liability. The jury also found the owner of the saloon, Via Mora, Inc., liable on grounds of negligence and a violation of the Dram Shop Act.
The codefendants Norman and June spent the evening together at Poor Richard’s Saloon where the plaintiff was also a patron. At closing time, in the parking lot adjoining the saloon, Norman and June confronted the plaintiff. There was evidence that Norman grabbed plaintiff by the collar and screamed at him. Immediately thereafter, June attacked plaintiff with a knife, or other sharp instrument, inflicting two deep puncture wounds which, fortunately, missed vital organs.
The defendants Norman and Via Mora, Inc. move for a new trial on the ground that the verdicts against them are contrary to the weight of the evidence (CPLR 4404). Norman contends, in particular, that the evidence was insufficient to permit the jury to infer that he engaged in a common plan or design, with the defendant June, to inflict a serious personal injury upon plaintiff and, therefore, that he could not be liable for the knife attack by June or the consequent injuries.
Among other issues, the jury was asked to decide whether Norman and June attacked plaintiff while acting independently, causing distinct harms (Restatement [Second] of Torts § 881) and/or whether Norman acted in concert with June’s attack (Restatement [Second] of Torts § 876). In the event that Norman acted independently, the jury was instructed that he would only be responsible for the divisible portion of the total harm, if any, which he alone had caused (Restatement [Second] of Torts § 433A). If Norman acted in concert with June, the court instructed, Norman would be responsible for the knife *486 wounds inflicted by June, assuming that Norman knew of June’s intent to inflict a serious injury and intentionally aided or encouraged June in the commission of such an attack (Restatement [Second] of Torts § 876).
There was ample evidence to support the jury conclusion that Norman had committed an independent assault and battery upon plaintiff by screaming at him in a threatening manner and by grabbing him by the shirt. The jury found, however, that Norman’s independent wrongful act was not a proximate cause of the plaintiffs physical injuries.
The jury also concluded that Norman acted in concert with June in the latter’s infliction of a serious injury upon plaintiff. The supporting evidence was circumstantial, but persuasive: The two are cousins and knew each other well; they arrived at the tavern, together, early in the evening; at about 9:00 p.m. June had attacked another patron, named Trinkle, who was escorting June’s former girl friend; June knocked Trinkle to the floor and kicked him in the head; some hours later, a second confrontation between June and Trinkle occurred which led to June’s ouster from the bar; while outside, June screamed for Trinkle to come out and fight; June was forcibly prevented from reentering the bar; there was testimony that June’s menacing shouts were audible inside the tavern and that the caterwauling continued for many minutes.
Norman was in a position to see and hear all of these events. Nevertheless, Norman ignored the urging of his girl friend to leave the scene. Instead, he chose to join June in the parking lot outside the tavern where June awaited Trinkle with the intent, the jury could have found, to attack him a second time. On all the surrounding circumstances, the inference could have been drawn that June intended a second attack upon Trinkle no less brutal than the first and that Norman was committed to assisting in the accomplishment of that purpose.
We do not know whether the jury decided that the attack upon plaintiff was a case of mistaken identity. However, they were instructed that an assault and battery is no less wrongful if mistakenly inflicted upon someone other than the intended victim. Plainly, the jury had sufficient circumstantial evidence to find that Norman intended to aid June, and did aid June, knowing that June sought to inflict a serious injury upon someone. There was no inconsistency in the special verdicts which found that Norman had accosted plaintiff without inflicting a physical injury but, immediately thereafter, acted in concert with June in the knife attack.
*487 As to the Dram Shop cause of action, Via Mora, Inc. argues that there was no direct evidence that June or Norman were "visibly” drunk when served by the bar and, hence, the finding that Via Mora, Inc. violated the statute (General Obligations Law § 11-101) cannot be sustained. We do not agree. Norman had testified to a Grand Jury that he and June were intoxicated. That evidence was received at trial, though Norman testified that he meant only that the two were "legally” impaired. Needless to say, the jury was free to accept the Grand Jury admission as true and reject the rationalization as false. This admission, together with the other circumstantial evidence regarding the conduct of Norman, who was June’s boon companion throughout the course of the rowdy evening, would support a finding that a reasonably attentive barkeeper would have noticed their condition.
Regarding the negligence cause of action, Via Mora, Inc. contends that, by having ejected the obstreperous June from the bar, it fulfilled its common-law duty to keep the premises it owned or controlled reasonably free of known dangerous conditions. The attack upon plaintiff occurred in the parking lot, which was not owned by the saloon. We note the following circumstances: the adjoining parking lot provided the only available parking space for patrons of the tavern which is located in the countryside where no other parking is possible; the lot was illuminated by external lights provided by the tavern; the garbage dumpster used by the tavern was located on the far side of the lot and could not be reached without traversing the lot on a daily basis; the tavern regularly policed the lot, picking up litter left by patrons; the threats and taunts directed at Trinkle, a patron still inside the bar, were audible by the bartender inside the building, causing Via Mora, Inc. to provide an escort for Trinkle from the bar to his vehicle in the lot.
The evidence supports the jury’s implicit finding that the lot was under the effective control of the tavern, was used as part of its premises, and that management had assumed an obligation to protect patrons using the lot. This combination of factors justifies the extension of a duty of care to patrons in the lot (Lippman v Hines, 138 AD2d 845, 846) and also distinguishes this case from those which exonerate barkeepers, as a matter of negligence law, from liability for injuries caused by intoxicated patrons which occur on public highways and other places remote from the seller’s premises.
Finally, the parties disagree as to the form and content of the judgment for compensatory damages. Plaintiff contends, *488 erroneously, that defendants are not entitled to the protection of CPLR article 16 because their liability is founded on the breach of different and distinct duties and, therefore, such breaches are not "joint” within the intendment of CPLR 1601. On the contrary, CPLR article 14, the threshold to CPLR article 16, permits contribution between defendants who are liable to the plaintiff on entirely different theories (Board of Educ. v Sargent, 71 NY2d 21, 27). It is only necessary that all defendants are found liable for the same injury (Cresswell v Warden, 164 AD2d 855, 856). The mere fact that the Dram Shop Act imposes a nondelegable duty upon Via Mora, Inc. does not preclude its cross claims against those who affirmatively caused the injury (Herrick v Second Cuthouse, 100 AD2d 952, affd 64 NY2d 692; cf., Kelly v Diesel Constr., 35 NY2d 1).
The more important issue is whether or not the jury allocation of 5% fault to plaintiff should be deducted from the total shares of responsibility to be considered under article 16. The jury also assigned 50% of fault to Via Mora, Inc. and 45% to Norman/June. Via Mora, Inc. seeks the protection of article 16 on the ground that its assigned fault is 50% or less of the total. The percentage of fault assigned to Norman and June also qualifies but they are excluded by reason of having acted intentionally or recklessly (CPLR 1602 [5], [7], [11]). If the 5% fault assigned to plaintiff is subtracted from consideration, the share of fault assigned to Via Mora, Inc., and the Norman/ June duo, must be extrapolated from 95% to 100% which would nudge the Via Mora, Inc. share over the 50% mark. Thus, Via Mora, Inc. would lose the "several liability only” benefit of article 16. It would then become liable for 100% of the damages, less plaintiff’s 5% share.
The issue is discussed by Professor Siegel (NY Prac § 168B [2d ed]). The author dolefully observes that: "Article 16 does not address the point” which, he notes, is a "fundamental one” (Siegel, NY Prac § 168B, at 249 [2d ed]). He suggests, however, that the long list of exceptions to the benefit of the article imports a grudging degree of legislative enthusiasm. No later cases have been brought to our attention by counsel.
The policy behind the common-law rule which imposes joint and several liability upon tortfeasors who contribute, in whatever degree, to the same injury is based upon the sense that compensation of the relatively innocent victim serves a more important purpose than striking a nuanced balance between and among the relatively guilty. Article 16 recognizes, *489 however, that the rule works unjustly where the disparity between minor fault and major financial punishment becomes extreme.
We must weigh the motives behind these somewhat conflicting statutory policies: Here, arguably, the tavern was only passively responsible, having failed to observe the effect of alcohol upon Norman and June. Nevertheless, the jury assigned a higher share of fault to the tavern than to Norman/June who, it would seem, were the active wrongdoers. The jury allocation, while debatable, does not lack a rational basis. The jury could have concluded that the youthful duo behaved badly, but predictably, given the raucous and ungoverned environment condoned by Via Mora, Inc. They might have reasoned that the adult management of the tavern was in a superior position to change that environment and, thereby, to prevent the injury.
Accordingly, the fundamental statutory purpose (i.e., to prevent a disproportionate penalty) does not fully obtain in respect to Via Mora, Inc. Moreover, the statute is in derogation of the common law. Therefore, where the advancement of the remedial purposes of the statute is not being served, as here, the statute should be construed narrowly. Lastly, the statute itself places the burden of proof upon Via Mora, Inc. to show that only separate liability should be imposed (CPLR 1603).
Under these circumstances, and without pretending to divine the unexpressed intent of the Legislature for all future purposes, we conclude that the plaintiff’s share of contributory fault should be excluded from the calculation and that the remaining shares must be extrapolated to 100%, with the result that Via Mora, Inc. is not entitled to the benefit of article 16. Under article 14, Via Mora, Inc. would be entitled to contribution from Norman/June to the extent that it pays more than its extrapolated share to plaintiff in satisfaction of the judgment.
The jury was not asked to apportion liability, as between Norman and June. Norman, as part of the postverdict motions, now asks the court to perform that task. June, as noted above, has defaulted. We find that 80% of fault should be attributed to June and 20% to Norman. This allocation, of course, has no effect upon plaintiff’s right to collect the full amount of the judgment, reduced by 5%, from any of the three defendants.
Plaintiff to submit judgment, on notice.