*948 OPINION OF THE COURT
Gustin L. Reichbach, J.
Plaintiff, Ian E. Lewis, initiated this action against his employer, defendant National Railroad Passenger Corp. (Amtrak), pursuant to 45 USC §§ 51-60, the Federal Employers’ Liability Act (FELA). Beginning at 4:30 a.m. on April 10, 1990, Amtrak police at Penn Station began receiving information from the New York City Police Department that a brother of an Amtrak employee had just murdered a man in Brooklyn and had announced that he was now going to kill his brother. Over the next 2V2 hours additional information was received. Plaintiff, while employed as a “Red Cap” by defendant at Penn Station, was shot by his brother at 7:00 a.m. that morning. The issue for the jury is whether, based on the information available to it, the defendant acted reasonably in taking steps to identify and provide for plaintiff’s safety.
Shortly before submission of the case to the jury defendant made an application to have the jury apportion liability, not only between plaintiff and defendant but also as to the nonparty shooter, plaintiff’s brother. Although not pleaded as an affirmative defense, defendant sought to invoke CPLR article 16 so as to limit its liability for noneconomic loss to its equitable share.* Defendant relies upon Siler v 146 Montague Assocs. (228 AD2d 33 [2d Dept 1997], appeal dismissed 90 NY2d 927), which held that in a negligence action based upon premises security, a “merely negligent” tortfeasor can seek to limit its liability pursuant to CPLR article 16 by an apportionment of liability against a nonparty intentional tortfeasor. Was this a common-law negligence action, defendant would clearly
*949 be entitled to the benefits of article 16 under Siler (supra). Plaintiff contends, however, that an employee’s right to maintain an action and recover damages under 45 USC § 51 is governed by Federal statutory law and may not be diminished by a State rule such as article 16.
The issue presented is whether article 16, permitting a negligent tortfeasor to limit its liability for plaintiffs damages only to its equitable share, is available in an action brought under 45 USC §51 et seq. For the reasons set forth below, the court finds that it is not.
45 USC § 51 provides in pertinent part: “Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * for such injury * * * resulting in whole or in part from the negligence of any of the * * * employees of such carrier”.
“It is now well-settled that Congress explicitly directed that FELA wholly preempt state-law remedies for railway employees injured in the course of employment”. (Rogers v Consolidated Rail Corp., 948 F2d 858, 860 [2d Cir 1991].) It is Federal substantive law that governs FELA cases adjudicated in State courts, though State procedural rules apply. (St. Louis Southwestern Ry. Co. v Dickerson, 470 US 409 [1985].)
The Supreme Court, while recognizing “ ‘the impossibility of laying down a precise rule to distinguish “substance” from “procedure,” ’ Brown v. Western R. Co. of Alabama, 338 U. S. 294, 296 (1949)”, found it well settled that “the measure of damages in an FELA action is an issue of ‘substance’ determined by federal law. Norfolk & Western R. Co. v. Liepelt, 444 U. S. 490, 493 (1980).” (St. Louis Southwestern Ry. Co. v Dickerson, 470 US, supra, at 411; see also, Dunn v Consolidated Rail Corp., 125 AD2d 228 [1st Dept 1986].) Thus, the Supreme Court has held, inter alia, that issues of whether future damage awards should be made on the basis of present value, as well as the availability of prejudgment interest, are both governed by Federal, not State, law. (St. Louis Southwestern Ry. Co. v Dickerson, supra; Monessen Southwestern Ry. Co. v Morgan, 486 US 330, 335 [1988] [“ ‘the proper measure of damages (under the FELA) is inseparably connected with the right of action,’ and therefore is an issue of substance that ‘must be settled according to general principles of law as administered in the Federal Courts’ ”].)
The right to recover in damages for injuries resulting in part from the railroads’ negligence is a Federal right that cannot be defeated by the forms of local practice. (Brown v Western Ry. of Ala., 338 US 294 [1949], supra.)
*950 The court finds that a limitation on liability as contained in article 16 is an issue of substantive not procedural law.
As noted, the statute provides that the “railroad * * * shall be liable in damages ... for * * * injury . . . resulting in whole or in part from [its] negligence” (45 USC § 51 [emphasis added]). There is nothing in the statute permitting a railroad to limit its common-law joint and several liability only to its equitable share as provided for in New York’s CPLR article 16. Indeed, the language of the statute suggests another result was intended, that the railroad would be liable in damages even if partially responsible. More specifically, 45 USC § 55 provides that “[a]ny * * * rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void”, except for certain fenumerated setoffs. The only diminution of damages specifically provided by the statute is for the comparative negligence of the plaintiff. (45 USC § 53.) Section 53, made applicable to all actions brought after April 22, 1908, was at the time it was enacted a substantial expansion of then traditional notions of tort liability. The then prevailing common-law rule was that any contributory negligence on the part of a plaintiff would defeat their right to a recovery. By not defeating plaintiffs claim entirely as a consequence of plaintiffs contributory negligence, but rather just reducing liability by plaintiffs comparative share, the statute was “an avowed departure from the rules of the common law”. (Sinkler v Missouri Pac. R. R. Co., 356 US 326, 329 [1958].) This was done, in the words of the Senate Committee, which reported the act, to achieve its broad purpose to adjust the losses “to the strength of those who in the nature of the case ought to share the burden”. (Sen Rep No. 460, 60th Cong, 1st Sess 3.)
A refusal to restrict traditional joint and several negligence liability is in keeping with the “accommodating scope” given the statute. (Sinkler v Missouri Pac. R. R. Co., 356 US, supra, at 330, 331.) The Supreme Court recognized that FELA was enacted in “response to the special needs of railroad workers * * * [and] [t]he cost of human injury * * * must be borne by someone, and the FELA seeks to adjust that expense * * * between the worker and the carrier.” (Sinkler v Missouri Pac. R. R. Co., at 329; see also, Vann v Long Is. R. R. Co., 133 AD2d 624 [2d Dept 1987].)
This accommodating scope is further reflected by the statute’s imposition of liability upon a substantially lower *951 quantum of proof to establish both negligence and the causal nexus between the negligence and the happening of the event.
As the dissent in Sinkler (supra, at 332, 332-333, n 1) noted, in “Rogers v. Missouri Pacific R. Co., 352 U. S. 500 * * * the [Supreme] Court in effect established a ‘scintilla’ rule in these cases for judging the sufficiency of the evidence on the issue of ‘causation.’ In subsequent decisions that rule has been extended, sub silentio, to cover also the issue of ‘negligence.’ * * * Webb v. Illinois Central R. Co., 352 U. S. 512 * * * Butler v. Whiteman, 356 U. S. 271.” This difference is highlighted by the contrast between the standard charge on proximate cause in an ordinary negligence case and one involving, as here, a common carrier. Contrast PJI3d 2:70, “An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury” (emphasis added), with PJI3d 2:180, which permits a finding for the plaintiff if “such negligence played some part, however slight, in causing the occurrence” and that the defendant could prevail only if “the negligence of the defendant played no part whatsoever in causing * * * plaintiff’s injuries” (emphasis added).
This determination, that article 16 has no application to actions brought pursuant to the FELA, is in keeping with Congress’ stated intent to provide liberal recovery for workers and “ ‘to shift the burden of the loss resulting from these casualties from “those least able to bear it” and place it upon those who can’ ”. (Rogers v Consolidated Rail Corp., 948 F2d 858, 862 [2d Cir 1991], supra.) As noted by the court in Rogers, “ ‘FELA is a broad remedial statute, and [we] have adopted a “standard of liberal construction in order to accomplish [Congress’] objects.” ’ ” (Rogers v Consolidated Rail Corp., supra.)
Defendant’s application to submit the issue of the nonparty intentional tortfeasor liability to the jury for the purpose of applying article 16 is denied.

 CPLR article 16 does not specifically address when and how a defendant is to give notice of its intent to seek apportionment between joint tortfeasors, and thereby limit its liability for economic loss to its equitable share. However, when such a claim is raised late in the litigation, prejudice may result. The court notes that the 1998 Legislative Program of the New York State Judiciary proposes to amend the statute to require reliance on article 16 to be pleaded as an affirmative defense in its answering papers.
Even if not required currently to be pleaded as an affirmative defense, the court retains the power to prevent prejudice if the claim is raised too late in the litigation. In this case, defendant did not seek to employ article 16 as a means of reducing its liability until the court’s precharge conference, after virtually all the evidence had been presented to the jury. Notwithstanding that the court would have little trouble appreciating the potential for prejudice in raising the claim after the evidence has been presented, plaintiff, while objecting on substantive grounds, raised no procedural objection or claim of prejudice from the delay. Consequently, the court need not and does not address this issue of when such a claim must be raised.