1999 ND 12

**Alice HURT, Plaintiff and Appellant,**

**Eric Hurt, and Ernie Mathias on behalf of Brady Hurt, a minor, Plaintiffs**

**v.**

**Tyler FREELAND, Defendant**

**Traci Olson, and Timothy Olson, Defendants and Appellees**

**Civil No. 980169.**

Supreme Court of North Dakota.

Jan. 27, 1999.

Thomas A. Dickson and Timothy Q. Purdon, Dickson Law Office, Bismarck, N.D., for plaintiff and appellant; argued by Thomas A. Dickson.

Daniel L. Hull, Anderson & Bailly, Fargo, N.D., for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] In this case we are asked to decide whether passengers are liable for the injuries and deaths caused by an intoxicated driver. We are also asked to decide whether false testimony may create civil liability. We affirm the summary judgments of dismissal, concluding that absent a special relationship, not present here, there is no basis for liability on the part of passengers of an intoxicated driver, and there is no basis for civil liability based on the claimed false testimony.

I

[¶ 2] As reported in *Hurt v. Freeland,* 1997 ND 194, 569 N.W.2d 266, this case arises from an automobile accident on December 24, 1993. A pickup driven by Cory Meyer, with Traci and Tim Olson and Tyler Freeland as passengers, collided with a car driven by Douglas Hurt, with his father, Edwin Hurt, and Douglas's wife, Sandra Hurt, and Douglas and Sandra's two sons, Eric and Brady Hurt, as passengers. Edwin, Douglas, and Sandra Hurt were killed. Eric and Brady Hurt were seriously injured.

[¶ 3] Meyer, the Olsons, and Freeland had been consuming alcohol. The Olsons spent part of Christmas Eve drinking in the Ludden Tavern. After they left the tavern, they went to Freeland's trailer in Ludden. In the early evening, the Olsons, being too intoxicated to drive, asked Meyer for a ride to Oakes, where Traci Olson's mother lived. Meyer

agreed, even though Oakes was somewhat beyond his destination, his parents' farm south of Oakes. While traveling north to Oakes from Ludden, the pickup hit a patch of ice and crossed into the southbound lane. Tim Olson told Meyer how to move the pickup off the ice and back into the northbound lane. Just before impact, Tim Olson told the occupants of the vehicle to "Brace yourselves."

[¶ 4] Edwin Hurt's wife, Alice Hurt, and Eric Hurt, and Ernie Mathias on behalf of Brady Hurt, a minor, sued the Olsons and Tyler Freeland on traditional negligence grounds.[1] On the Olsons' motion, the court granted partial summary judgment on those grounds, but allowed the Hurts to amend their complaint. The Hurts' amended complaint alleged passenger negligence, civil conspiracy, state RICO, intentional infliction of emotional distress, and prima facie tort. The Olsons again moved for summary judgment. The district court granted their motion, dismissing the amended complaint against them. Freeland did not appear in the action or answer the complaint. Because Freeland did not answer the complaint and was neither dismissed from this case nor had judgment entered against him, we dismissed the appeal for lack of Rule 54(b), N.D.R.Civ.P., certification, because of the unresolved claim between the Hurts and Freeland. *Hurt*, 1997 ND 194, ¶ 6, 569 N.W.2d 266.

[¶ 5] Following our dismissal of the appeal, the Hurts moved the district court to reconsider its grant of summary judgment. The district court denied the motion. On March 15, 1998, the district court included Freeland in its orders granting summary judgment nunc pro tunc. Judgment was entered on March 20, 1998. Alice Hurt appealed,[2] on the grounds of passenger liability and civil conspiracy to commit perjury.

[¶ 6] The district court had jurisdiction under N.D.C.C. § 27–05–06. Hurt's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

1. Hurt settled with Cory Meyer.

II

[¶ 7] Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either litigant is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the results. *Swenson v. Raumin*, 1998 ND 150, ¶ 8, 583 N.W.2d 102 (citing *Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 12, 576 N.W.2d 505). On appeal, the evidence must be viewed in the light most favorable to the opposing party, and that party must be given the benefit of all favorable inferences. *Wishnatsky v. Bergquist*, 550 N.W.2d 394, 397 (N.D.1996).

[¶ 8] In considering a motion for summary judgment, a court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from that evidence to determine whether summary judgment is appropriate. *Matter of Estate of Otto*, 494 N.W.2d 169, 171 (N.D. 1992). Although the party seeking summary judgment has the burden to clearly demonstrate there is no genuine issue of material fact, the court must also consider the substantive standard of proof at trial when ruling on a summary judgment motion. *State Bank of Kenmare v. Lindberg*, 471 N.W.2d 470, 474–75 (N.D.1991). The party resisting the motion may not simply rely upon the pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Kummer v. City of Fargo*, 516 N.W.2d 294, 297 (N.D.1994). Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Matter of Estate of Stanton*, 472 N.W.2d 741, 746 (N.D.1991).

2. Eric Hurt, and Ernie Mathias on behalf of Brady Hurt, a minor, both parties to the initial action, did not join in the appeal.

[¶ 9] Although negligence actions are ordinarily not appropriate for summary judgment, whether a duty exists is generally a preliminary question of law for the court to decide. *Crowston v. Goodyear Tire & Rubber Co.*, 521 N.W.2d 401, 406 (N.D.1994); *DeLair v. County of LaMoure*, 326 N.W.2d 55, 58 (N.D.1982). If the existence of a duty depends upon factual determinations, the facts must be determined by the fact finder. *Rawlings v. Fruhwirth*, 455 N.W.2d 574, 577 (N.D.1990); *Barsness v. General Diesel & Equipment Co.*, 383 N.W.2d 840, 843 (N.D. 1986). Issues of fact, however, may become issues of law for the court, if reasonable persons could reach only one conclusion from the facts. *Rawlings*, 455 N.W.2d at 577.

### III

[¶ 10] Hurt argues the Olsons, as passengers, negligently breached a duty owed to the Hurts when they arranged for Meyer to give them a ride.

### A

[¶ 11] To establish a cause of action for negligence, Hurt must demonstrate the Olsons owed the decedents a duty of care, which the Olsons breached. In *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D.1996), we stated negligence "consists of a duty on the part of an allegedly negligent person to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty" (citing *Rawlings*, 455 N.W.2d at 576; *Carlson Homes, Inc. v. Messmer*, 307 N.W.2d 564, 566 (N.D.1981)). If no duty exists on the part of the defendant, there is no negligence. *DeLair*, 326 N.W.2d at 58; *Belt v. City of Grand Forks*, 68 N.W.2d 114, 119 (N.D.1955).

### B

[¶ 12] Hurt has not cited, nor have we found, any North Dakota authority stating vehicle passengers owe a duty to a third party for injuries caused by a driver's negligence.

[¶ 13] In analyzing when a duty exists, Professors Prosser and Keeton have said:

The court must balance the following factors when determining the existence of duty in each particular case: (1) foreseeability of harm to plaintiff; (2) degree of certainty that plaintiff suffered injury; (3) closeness of connection between defendant's conduct and injury suffered; (4) moral blame attached to defendant's conduct; (5) policy of preventing future harm; (6) extent of burden to defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (7) availability, cost, and prevalence of insurance for the risk involved.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 359 n. 24 (5th ed.1984) (citations omitted). A generally accepted rule is passengers owe no duty to injured parties. Brian Shipp, Note, *Price v. Halstead: Liability of a Guest Passenger for the Negligence of his Drunk Driver*, 42 Okla. L.Rev. 159, 162 ("passengers are not liable for the negligence of the driver in the absence of a special relationship between passenger and driver").

### C

[¶ 14] North Dakota has established a statutory duty for persons providing alcohol to a person under twenty-one years of age, an incompetent, or an obviously intoxicated person. North Dakota's dram shop law provides "for fault resulting from intoxication":

Every spouse, child, parent, guardian, employer, or other person who is injured by any obviously intoxicated person has a claim for relief for fault under section 32–03.2–02 against any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to a person under twenty-one years of age, an incompetent, or an obviously intoxicated person, and if death ensues, the survivors of the decedent are entitled to damages defined in section 32–21–02.

N.D.C.C. § 5–01–06.1.

[¶ 15] Dram shop laws are sui generis. *Stewart v. Ryan*, 520 N.W.2d 39, 45

(N.D.1994); *Day v. General Motors Corp.,* 345 N.W.2d 349, 355 (N.D.1984). The legislature's intent was to create an entirely new form of liability for wrongful sale of alcohol. "The liability created by the Civil Damage Act has no relation to any common law liability, or to any theory of tort. It was the intention of the legislature to create liability in a class of cases where there was no liability under the common law." *Iszler v. Jorda,* 80 N.W.2d 665, 667 (N.D.1957) (citations omitted).

> At common law, there was no tort liability for selling or giving liquor to an able-bodied person, because drinking the liquor, not the furnishing of it, was the proximate cause of any subsequent injury. 45 Am. Jur.2d, Intoxicating Liquors, §§ 553, 554 (1969). In *Feuerherm [v. Ertelt], supra* [286 N.W.2d 509 (N.D.1979)], this court said that our prior dram shop law created an entirely new cause of action in which liability was imposed upon a finding of a violation of the statute and not upon a finding of fault in the sense of wrongful intent or negligent conduct. *See Iszler v. Jorda,* 80 N.W.2d 665 (N.D.1957). Dram shop laws were enacted for remedial purposes, and as this court indicated in *Iszler, supra,* should be construed to advance those remedial purposes and to suppress the mischief of dram shop violations. *See also Feuerherm, supra.*

*Stewart,* 520 N.W.2d at 45–46.

[¶ 16] Although Meyer was under twenty-one years of age at the time, nothing in the record indicates the Olsons provided Meyer with alcohol. As the district court stated, "plaintiffs have absolutely no evidence—admissible competent evidence showing ... [t]hat any of the[ ] passengers furnished alcohol to Mr. Meyer. There has been absolutely no assertion of that. There's no factual basis for it, in fact, plaintiffs haven't even asserted it in their brief." *Compare Born v. Mayers,* 514 N.W.2d 687, 690 (N.D.1994) (dram shop statute imposes liability on persons who knowingly provide alcoholic beverages to an underage person, an incompetent, or an obviously intoxicated person).

[¶ 17] There is no basis to find a statutory duty under North Dakota's dram shop law.

**D**

[¶ 18] Hurt argues the Olsons are jointly liable with Meyer under N.D.C.C. § 32–03.2–02, which deals with comparative fault and allocation of fault in North Dakota. Hurt claims the Olsons acted in concert with Meyer and actually encouraged and gave substantial assistance in the commission of the tort, and are therefore liable under N.D.C.C. § 32–03.2–02.

**1**

·[¶ 19] Contrary to Hurt's claims, neither the original nor the amended complaints allege the Olsons or others acted in concert with Meyer, aided or encouraged Meyer, or ratified or adopted his actions.

**2**

[¶ 20] The 1987 Legislature enacted the comparative fault provisions in N.D.C.C. Chapter 32–03.2. *See* 1987 N.D. Sess. Laws ch. 404. N.D.C.C. § 32–03.2–02 provides:

> *Modified comparative fault.* Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all other persons who contribute to the injury, but any damages allowed must be diminished in proportion to the amount of contributing fault attributable to the person recovering. The court may, and when requested by any party, shall direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury. The court shall then reduce the amount of such damages in proportion to the amount of fault attributable to the person recovering. When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party, except that

any persons who act in concert in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault. Under this section, fault includes negligence, malpractice, absolute liability, dram shop liability, failure to warn, reckless or willful conduct, assumption of risk, misuse of product, failure to avoid injury, and product liability, including product liability involving negligence or strict liability or breach of warranty for product defect.

"The effect of the enactment of the comparative fault provisions was to significantly revise tort liability in this state to shift the focus from traditional doctrines to the singular, inclusive concept of fault." *Stewart v. Ryan,* 520 N.W.2d 39, 45 (N.D.1994) (citing *Champagne v. United States,* 513 N.W.2d 75 (N.D.1994); *Erickson v. Schwan,* 453 N.W.2d 765 (N.D.1990)). The clear intent of section 32–03.2–02 was to replace joint and several liability with several allocation of damages among those who commit torts in proportion to the fault of those who contributed to an injury. *See Kavadas v. Lorenzen,* 448 N.W.2d 219, 223 (N.D.1989). Section 32–03.2–03 requires the comparison of several types of fault for purposes of allocating damages in proportion to the amount of fault attributable to the persons who contributed to the injury. The statutory language addresses three different types of conduct by tortfeasors: those who "act in concert in committing a tortious act," those who "aid or encourage" a tortious act, or those who "ratif[y] or adopt[ ]" the tortious act.

[¶ 21] Hurt claims N.D.C.C. § 32–03.2–02 establishes liability if the Olsons and Meyer were acting together or if the Olsons gave assistance or encouragement. In support of this argument, Hurt cites *Kavadas,* 448 N.W.2d 219. N.D.C.C. § 32–03.2–02 does not create an independent basis of liability, rather it deals with the allocation of damages among those already at fault. *Target Stores v. Automated Maintenance Services, Inc.,* 492 N.W.2d 899, 902 (N.D.1992). Contrary to Hurt's interpretation, *Kavadas* does not create an independent basis for liability. *See id.* at 224.

**E**

[¶ 22] We next look at the substantive law to consider whether the parties "acted in concert." "A person is deemed to act in concert when he acts with another to bring about some preconceived result." Black's Law Dictionary 289 (6th ed.1990). To find concerted action, the substantive law applied in other jurisdictions follows the Restatement (Second) of Torts § 876. This section, in part, states:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement. . . .

[¶ 23] The Minnesota Supreme Court in *Olson v. Ische,* 343 N.W.2d 284, 289 (Minn. 1984), applied section 876 and granted summary judgment to the passengers riding with a drunk driver. Citing to the comments to § 876 and to a Massachusetts court facing a similar issue, the *Olson* court stated:

> In the tort field, the doctrine [of section 876] appears to be reserved for application to facts which manifest *a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result* . . . . *"[T]he mere presence of the particular defendant at the commission of the wrong, or his failure to object to it, is not enough to charge him with responsibility."* [Citing Prosser.]

Here there is not the kind of situation where it can be said the driver and passenger were acting "in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result." Restatement (Second) of Torts § 876, comment (a) (1977). Nor is there the kind of *"substantial encouragement"* by the passenger of the driver's conduct needed to impose joint tort liability. Fritz was with Ische, partying with others, each doing his own drinking voluntarily, and

Fritz voluntarily accompanied Ische on his return trip to Norwood in a guest-host driving situation. We hold that, as a matter of law, plaintiff-appellants do not have a cause of action against defendant Fritz under section 876 of the Restatement (Second) of Torts.

*Id.* (emphasis added). *See also Welc v. Porter*, 450 Pa.Super. 112, 675 A.2d 334, 338 (1996) (holding passenger owed no duty to third person); *Brown v. Jones*, 200 Mich. App. 212, 503 N.W.2d 735, 736 (1993) (finding where no special relationship exists, passengers did not owe a duty to plaintiff to protect her from the driver); *Wemett v. Schueller*, 545 N.W.2d 1, 3 (Iowa Ct.App.1995) (finding no duty to injured third party where defendants had not supplied driver with alcohol).

[¶ 24] There are numerous cases where no duty on the part of passengers was found and liability did not attach. Gregory G. Sarno, Annotation, *Passenger's Liability to Vehicular Accident Victim for Harm Caused by Intoxicated Motor Vehicle Driver*, 64 A.L.R.4th 272, § 4 (1988); *see also* Brian Shipp, Note, *Price v. Halstead: Liability of a Guest Passenger for the Negligence of his Drunk Driver*, 42 Okla. L.Rev. 159 (finding most courts do not allow for passenger liability). Specifically, in "decisions in which a passenger did not furnish intoxicants to a driver ... the passenger was exonerated of liability for the intoxicated driver's vehicular accident." *Id.*

[¶ 25] There is nothing to indicate the Olsons aided or encouraged Meyer. They did not provide alcohol to him before or during the drive to Oakes. Simply stated, the Olsons needed a ride, and Meyer provided one.

### 1

[¶ 26] In the case where a passenger actively furnishes alcohol to the driver, however, the situation is different, and some courts have used § 876(b) to create passenger duty to third parties. *See* 64 A.L.R.4th 272, § 3(a) (citing cases where a passenger owed a duty because the passenger furnished intoxicants to the driver); *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987). Liability is primarily based on the language of

§ 876(b), which "provides that one is subject to liability for harm resulting to a third person from the tortious conduct of another if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Id. See also Born v. Mayers*, 514 N.W.2d 687, 690 (N.D.1994) (dram shop liability for those who provide alcoholic beverages).

[¶ 27] For instance, in *Price*, 355 S.E.2d at 389, the Court, in reversing the dismissal of a cause of action based on a theory of joint concerted tortious activity, announced the rule that a passenger may be found liable for injuries to a third party caused by intoxication of the driver of the vehicle in which he is riding if two conditions are met: 1) the driver was operating his vehicle under the influence of some intoxicant that proximately caused the accident, and 2) the passenger's conduct substantially encouraged or assisted the driver's alcohol or drug impairment. *Id.* In contrast to the Olsons, the passengers in *Price* actively provided alcohol and marijuana to the driver during the trip and lent substantial aid and encouragement to him in his negligent driving.

[¶ 28] There is no evidence the Olsons furnished alcohol or encouraged Meyer to drink alcohol. The evidence does not show the Olsons knew Meyer was intoxicated. Hurt has established no basis for liability.

### 2

[¶ 29] Hurt argues the advice given by Tim Olson to Meyer immediately before the crash indicates control or interference. Liability may attach where the passenger has substantially interfered with the operation of the vehicle, because a passenger has a duty not to interfere with the operation of the vehicle. *See Lind v. Slowinski*, 450 N.W.2d 353, 357 (Minn.Ct.App.1990) (stating a passenger may be liable to others for interfering with the operation of the vehicle). The Minnesota Supreme Court has also said:

A passenger who interferes with his driver's operation of the motor vehicle, for instance by grabbing the steering wheel, may be liable to others, and a passenger

who is the owner of the car may be liable, at common law, for negligent entrustment to an incompetent driver. This case ... is different. We hold that a passenger has no duty to members of the public to control the operation of a motor vehicle by its intoxicated owner, where, as under the circumstances here, there is no special relationship between the driver-owner and the passenger.

*Olson v. Ische,* 343 N.W.2d 284, 288 (Minn. 1984). Here, there is no evidence that Meyer followed Olson's advice, nor that the advice contributed to the accident. There is no evidence the advice constituted interference with the operation of the vehicle, or constituted control of the vehicle. Olson's suggestions were just that—suggestions on how Meyer might best avoid an impending collision.

### 3

■ [¶ 30] Because Meyer went somewhat past his destination and toward Oakes at the Olsons' request, Hurt argues the Olsons owe a duty. In *Fugate v. Galvin,* 84 Ill.App.3d 573, 40 Ill.Dec. 318, 406 N.E.2d 19, 21 (1980), the court held "[t]he passenger's mere request to the driver to take him to a destination cannot create a duty." This was the case even though the passenger knew the driver was drunk. *Id.* 406 N.E.2d at 20, 40 Ill.Dec. 318. On the way home, the driver struck a pedestrian, who sued both the driver and the passenger. *Id.* The trial court's dismissal against the passenger was affirmed. *Id.* at 22, 40 Ill.Dec. 318.

[¶ 31] The Illinois Court of Appeals noted the passenger's request alone is not enough when the driver makes his own decision:

The decision to take the road in an intoxicated condition remained the driver's alone. Because [the driver] alone could make the decision, [the driver] alone had to bear the consequences of a bad decision. No duty should be placed on the passenger who has neither the legal right to require a person to drive nor to prevent him from driving. The relationship of friends riding together in an automobile does not place upon the passenger the duty to install a

capable driver in the seat of his friend's car.

*Id.* (citations omitted). This is echoed by Prosser and Keeton, who say:

[W]henever the automobile driver should, as a reasonable person, foresee that his conduct will involve an unreasonable risk of harm to other drivers or to pedestrians, he is then under a duty to them to exercise the care of a reasonable person as to what he does or does not do.

Keeton, *supra,* § 53 at 358.

[¶ 32] The Olsons' request that Meyer give them a ride home, although somewhat past his destination, is insufficient to create liability.

### F

■ [¶ 33] The responsibility belonged to Meyer, not to the Olsons. In the absence of some special relationship imposing a duty or causing the negligence of the driver to be imputed to the passenger, there is no duty upon a guest passenger to a person outside the vehicle to exercise any control or give any warning to the driver of the vehicle. The district court appropriately granted summary judgment on the negligence claim.

### IV

[¶ 34] Hurt claims a conspiracy to testify falsely. In detail, Hurt describes factual inconsistencies between the criminal trial testimony of Cory Meyer, the driver, and depositions given in this case. For purposes of summary judgment, the district court deemed certain facts to be true and correct. Most of these facts are related to inconsistencies in the parties' testimony from two different trials. The district court was aware of the inconsistencies when granting the summary judgment.

### A

■ [¶ 35] Hurt acknowledges in her brief, "[t]he general rule is that no civil action for damages lies for perjury." Other courts have echoed this proposition. *See State v. Cardenas–Hernandez,* 214 Wis.2d 71, 571 N.W.2d 406, 408 (App.1997) (stating "perjury may not form the basis for a civil

action for damages"); *Kale v. Palmer*, 791 S.W.2d 628, 632 (Tex.Ct.App.1990) (finding it established law that an unsuccessful litigant who has lost a case because of perjured testimony cannot maintain a civil action against the person who committed perjury, or against persons who allegedly conspired to have perjury committed); *Hawkins v. Webster*, 78 N.C.App. 589, 337 S.E.2d 682 (1985) (finding a civil action in tort does not arise from perjury).

### B

[¶ 36] Hurt contends "courts have long allowed an action for civil conspiracy to commit fraud where the fraud perpetrated takes the form of giving of false testimony under oath," citing two old cases, *Verplanck v. Van Buren*, 76 N.Y. 247 (N.Y.1879), and *Rice v. Coolidge*, 121 Mass. 393 (Mass.1876), to support this proposition. But even these cases provide no basis for civil conspiracy to commit perjury. "[O]ther jurisdictions have uniformly held that a plaintiff may not, by claiming conspiracy, avoid the doctrine there is no civil action for perjury." *Stolte v. Blackstone*, 213 Neb. 113, 328 N.W.2d 462, 466 (1982) (citations omitted).

[¶ 37] Although North Dakota has not directly confronted the issue of a civil action for perjury, we have ruled regarding a civil conspiracy. A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s]." *Burr v. Kulas*, 1997 ND 98, ¶ 18 n. 3, 564 N.W.2d 631 (citations omitted); *see also* 16 Am.Jur.2d Conspiracy §§ 50–53. "The distinguishing factor between a criminal conspiracy and a civil conspiracy is that damages, not the agreement, are the essence of the conspiracy." *Estate of Wenzel–Mosset by Gaukler v. Nickels*, 1998 ND 16, ¶ 37, 575 N.W.2d 425 (citing *Nautical Landings Marina v. First National Bank*, 791 S.W.2d 293, 299 (Tex.Ct.App.1990); 16 Am.Jur.2d, Conspiracy §§ 49, 52, 15A C.J.S., Conspiracy, § 1(1)).

### C

 [¶ 38] While there may have been inconsistencies in the testimony of the Olsons and Freeland and Meyer, there is no evidence of damages caused by the alleged conspiracy, and thus no basis for liability in any case. The district court appropriately granted summary judgment on the conspiracy claim.

### V

[¶ 39] The summary judgments of dismissal are affirmed.

[¶ 40] VANDE WALLE, C.J., NEUMANN and MARING, JJ., concur.

[¶ 41] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.

