# IN THE SUPREME COURT OF IOWA

No. 95 / 04-1825

Filed December 8, 2006

**NICHOLAS REILLY, DENNIS REILLY,
and MARCIA REILLY,**

      Appellees,

vs.

**CHRISTOPHER J. ANDERSON,
MICHAEL M. ANDERSON, and IMT
INSURANCE COMPANY,**

      Appellants,

**ALAN J. NAUGHTON and RICHARD
NAUGHTON,**

      Appellees.

_____

Appeal from the Iowa District Court for Story County, William J. Pattinson, Judge.

Appeal and cross-appeal from district court judgment following a jury verdict against tortfeasors and an insurer under an underinsured motorist benefits provision. **REVERSED AND REMANDED.**

John B. Grier of Cartwright, Druker & Ryden, Marshalltown, for appellant IMT Insurance Company.

Brian Yung of Klass Law Firm, L.L.P., Sioux City, for appellant Andersons.

John M. Trewet of Rutherford, Trewet & Knuth, Atlantic, for appellee Reillys.

William H. Roemerman of Crawford, Sullivan, Read & Roemerman, P.C., Cedar Rapids, for appellee Naughtons.

**CADY, Justice.**

In this case, we must primarily decide whether the theory of concerted action is compatible with our statutory comparative fault principles. We hold the theory of concerted action, despite requiring joint and several liability among concerted actors, is compatible with Iowa's Comparative Fault Act (CFA). We reverse the district court's decision holding otherwise, and remand for a new trial.

## I.    Background Facts and Proceedings.

On August 11, 2000, Christopher Anderson (Anderson), Alan Naughton (Naughton), and Nicholas Reilly (Reilly) set out in a Jeep owned by Anderson's father to go fishing at a pond outside Marshalltown. Anderson drove, Naughton rode as the front seat passenger, and Reilly sat in the back. On the way to the pond, Anderson produced a marijuana water bong. He asked Naughton to hold the steering wheel for him so he could take a hit off the bong. Naughton grabbed the steering wheel of the vehicle with his hand from his passenger seat position while the car was traveling at 50-55 miles an hour. During this time, control of the vehicle was lost and the vehicle crashed into the ditch. Reilly was severely injured.

Reilly and his parents (the Reillys) sued Anderson and his father (the Andersons); Naughton and his father, Richard Naughton, who owned some equipment that was unsecured in the cargo area of the Jeep when it crashed; and IMT Insurance Company (IMT), the Reillys' underinsured motorist insurance carrier. Richard Naughton obtained summary judgment as to his nonliability, and the case proceeded to trial against the remaining parties.

The jury returned a verdict finding Anderson sixty percent at fault, and Naughton and Reilly both twenty percent at fault. The jury found Reilly sustained $345,000 in damages, and his parents incurred $202,030.09 in damages.

All parties filed post-trial motions regarding the district court's entry of judgment. IMT, the Andersons, and the Reillys moved to enter judgment against Naughton and Anderson jointly and severally for the damages (reduced, of course, by Reilly's twenty percent fault). Naughton, on the other hand, moved for judgment notwithstanding the verdict or, in the alternative, a new trial. Naughton argued in his motion for JNOV there was no evidence he knew Anderson's conduct was negligent. In his alternative argument, Naughton made three claims for a new trial. First, there was no evidence he knew Anderson's conduct was negligent. Second, IMT was severed from trial and then rejoined as an interested party. Third, the court would violate Iowa Code section 668.3(5) (2005) by entering judgment against him and Anderson jointly.[1] The Andersons also filed a motion for a new trial. They argued the court erred in failing to instruct the jury on a joint-enterprise theory, and on Reilly's failure to mitigate damages. Finally, IMT filed a conditional motion for new trial, arguing the court erred in failing to submit its requested instructions to the jury.

---

[1]Section 668.3(5) provides: "If the claim is tried to a jury, the court shall give instructions and permit evidence and argument with respect to the effects of the answers to be returned to the interrogatories submitted under this section." Iowa Code § 668.3(5) (2005). Naughton claimed this section was not followed because the court instructed the jury that if it assigned less than fifty percent fault to a defendant, "that Defendant will only be liable to the extent of the percentage of fault assigned by you." If the court entered judgment against Naughton jointly with Anderson, Naughton would effectively be liable for eighty percent of the fault, even though the jury only assigned him twenty percent.

The district court denied all the motions. The court refused to enter a judgment holding Naughton and the Andersons jointly and severally liable, citing Iowa Code section 668.4.[2] It reduced Reilly's and his parents' damages by twenty percent, entitling Reilly to $276,000 and his parents to $161,624.07. The court entered a judgment for Reilly against Naughton for twenty percent of Reilly's damages—$69,000 (plus $4,909.06 in prejudgment interest). The court entered a judgment for Reilly against the Andersons for sixty percent of Reilly's damages— $207,000 (plus $14,729 in prejudgment interest). Because Anderson was more than fifty percent at fault, the Andersons were jointly and severally liable for Reilly's judgment against Naughton. Additionally, the court entered a judgment for Reilly's parents against Naughton for twenty percent of the parents' damages—$40,406.02 (plus $3,606.91 in prejudgment interest). The court also entered a judgment for Reilly's parents against the Andersons for sixty percent of their damages— $121,218.05 (plus $10,820.72 in prejudgment interest). Moreover, the Andersons were jointly and severally liable on the Reillys' judgment against Naughton. Thus, the judgment for the Reillys against Naughton totaled $117,921.99, and the judgment for the Reillys against the Andersons totaled $353,767.77. The Andersons only had $250,000 in insurance coverage, so they were underinsured by $103,767.77. However, the Reillys had $100,000 in UIM coverage from IMT, so the court entered a judgment against IMT to pay the Reillys $100,000.

The Andersons and IMT appealed, and Naughton and the Reillys cross-appealed. The Andersons and IMT argue the case should be

---

[2]Section 668.4 provides: "In actions brought under this chapter, the rule of joint and several liability shall not apply to defendants who are found to bear less than fifty percent of the total fault assigned to all parties." *Id.* § 668.4.

remanded with instructions to enter judgment jointly and severally against the Andersons and Naughton. In the alternative, they argue for a new trial, claiming the court failed to properly instruct the jury on an acting-in-concert or joint enterprise theory. In his cross-appeal, Naughton claims the court should have directed a verdict for him because there was no evidence to suggest Naughton was guilty of aiding and abetting. In addition, Naughton argues jury instruction No. 20 did not accurately state the law, and if it did, there was insufficient evidence to find him negligent under the court's instructions. The Reillys join the appellants Anderson and IMT in their arguments, and add in their cross-appeal that we should further modify the district court's order by eliminating Reilly's twenty-percent assignment of fault because it was not supported by substantial evidence.

**II.    The Andersons' and IMT's Appeal (the Reillys Join): Whether Naughton is Jointly and Severally Liable.**

**A.    Standard of Review.**

Because the court's decision was based on the interpretation of a statute, we review the court's refusal to enter judgment against the Andersons and Naughton jointly and severally for correction of errors at law. *See In re Detention of Cubbage*, 671 N.W.2d 442, 444 (Iowa 2003) ("Our review of the district court's construction and interpretation of the statute is for correction of errors at law." (citing *In re Detention of Swanson*, 668 N.W.2d 570, 575 (Iowa 2003))). Similarly, "[o]ur scope of review on objections to [jury] instructions is on assigned error." *State v. Maghee*, 573 N.W.2d 1, 8 (Iowa 1997).

**B.    Preservation of Error.**

Naughton first argues error was not preserved on this issue because IMT and Anderson failed to object to jury instruction No. 24.

That instruction read, "If you assign to a Defendant less than fifty percent of the total fault, that Defendant will only be liable to the extent of the percentage of fault assigned by you." Naughton claims the appellants' argument in favor of joint and several liability is essentially an argument against instruction No. 24 because Naughton was not found fifty percent or more at fault. Therefore, Naughton claims this objection was not preserved for appeal because neither IMT nor Anderson objected to instruction No. 24. As such, Naughton argues, it became the "law of the case." *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) ("Failure to timely object to an instruction not only waives the right to assert error on appeal, but also 'the instruction, right or wrong, becomes the law of the case.' " (quoting *Froman v. Perrin*, 213 N.W.2d 684, 689 (Iowa 1973))).

Even assuming the appellants' claim for joint and several liability is really an objection to instruction No. 24, we believe the appellants sufficiently objected to that instruction so that error was preserved and instruction No. 24 did not become "the law of the case." To properly preserve error, the appellants must have "specif[ied] the subject and grounds of the objection." *Maghee*, 573 N.W.2d at 8 (citing *State v. Hepperle*, 530 N.W.2d 735, 738 (Iowa 1995)). Furthermore, the "objection must [have] be[en] sufficiently specific to alert the district court to the basis for the complaint so that if there is error the court can correct it before submitting the case to the jury." *Id.* Otherwise, "[a] party's general objection to an instruction preserves nothing for review." *Id.*

It is true the Andersons and IMT did not specifically object to instruction No. 24. But they did object to instruction No. 20, and

counsel for IMT made the following record at trial when the court heard the parties' objections to jury instructions:

> I want to be sure that we are not agreeing to the fact that joint liability is not an issue in this cause by our objections to the instructions because I think that the way the court has submitted this issue, that in post-trial motions we will still be able to identify that and can correct it. And I just don't want anything that we're saying about the instructions to preclude a post-trial motion.
>
> And what I mean is that if they would find Anderson 40 percent at fault and Naughton 30 percent at fault, the only—if the doctrine of joint liability would apply, under the instructions that have been given a post-trial motion could be made where the court would make them jointly and severally liable for that combined fault. And I want to make sure that that issue is preserved by the objections that we've made to these instructions.

Counsel for the Reillys and the Andersons joined in these remarks. We believe this is "sufficiently specific to alert the district court to the basis for the[ir] complaint." *Id.* The appellants made known the subject for their complaint—the application of joint and several liability, and also the grounds for their complaint—that joint and several liability could still apply despite the defendants being found less than fifty percent at fault. This is the same argument they make on appeal. *Cf. id.* (finding the appellant's present contention on appeal, and the arguments in support of it, were not the same as the objections made at trial). Even if the objection was not ideal and "defective," it was not an inadequate general objection. *See Froman,* 213 N.W.2d at 689–90 ("To be adequate an objection [to a jury instruction] must advise the court of the basis for complaint and the real criterion is whether the objection alerted the trial court to the claimed error. Even a defective objection may accomplish that purpose."). The objection was adequate and the error was preserved.

**C. Naughton's Argument that Iowa Code Section 668.4 Prohibits Joint and Several Liability Against Him.**

All parties save Naughton argue that jury instruction No. 20, because it was based on the Restatement (Second) of Torts section 876(b) and our decision in *Heick v. Bacon,* 561 N.W.2d 45 (Iowa 1997), required the district court to enter judgment against Naughton jointly and severally. Naughton rejects this argument in several ways: (1) the principles allowing imputation of negligence in section 876(b) of the Restatement (Second) of Torts are trumped by Iowa's CFA, (2) Iowa courts have not recognized the concept of "joint drivers," (3) the Restatement does not require joint and several liability, and (4) the cases from other states that have employed joint and several liability in this area are distinguishable. Finally, Naughton argues that if we disagree with him on this issue, we must grant a new trial rather than ordering the district court to impose joint and several liability upon Naughton.

Instruction No. 20 read:

> Before the Plaintiffs can recover any damages from Alan Naughton, they must first prove all of the following propositions:
>
> 1. That Christopher Anderson was negligent in one or more of the following ways:
>
> > a. In failing to have his vehicle under control, or
> >
> > b. In failing to keep a proper lookout.
>
> 2. That Alan Naughton knew that Christopher Anderson would not have control of the vehicle and/or that Christopher Anderson would not keep a proper lookout if Christopher Anderson removed his hands from the steering wheel in order to light the marijuana pipe.
>
> 3. That Alan Naughton gave substantial assistance to Christopher Anderson to enable Christopher Anderson to so conduct himself.

4.     That Alan Naughton's conduct was a proximate cause of the Plaintiffs' damages.

5.     The amount of damage.

If the Plaintiffs failed to prove any of these propositions, the Plaintiffs are not entitled to recover damages from Alan Naughton. If the Plaintiffs did prove all of these propositions, you will consider the defense of comparative fault . . . .

As the appellants point out, the district court based this instruction on section 876(b) of the Restatement (Second) of Torts and our decision in *Heick.* This section of the Restatement (Second) of Torts, entitled "Persons Acting in Concert," reads:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876, at 315 (1979). In *Heick*, we specifically referred to paragraph (b) as a theory of recovery for "aiding and abetting." 561 N.W.2d at 51; *see Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994). A comment to paragraph (b) reads, "If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor *and is responsible for the consequences of the other's act.*" Restatement (Second) of Torts § 876 cmt. *d*, at 317 (emphasis added); *see Heick*, 561 N.W.2d at 51–52 (quoting comment *d*). Thus, the Restatement (Second) of Torts

specifically provides for joint and several liability when the other person gives substantial encouragement or assistance.[3]

Because the jury assigned Naughton a percentage of fault and this was the only instruction given governing his fault, the jury must have believed the plaintiffs proved all of the propositions in the instruction. Moreover, instruction No. 20 sets forth all the elements necessary to prove "aiding and abetting." Furthermore, we have long recognized "concert of action"—and the more specific theory of aiding and abetting—as a theory of recovery in civil cases.[4] *See, e.g.*, *Heick*, 561 N.W.2d at 51–52; *Schultz v. Enlow*, 201 Iowa 1083, 1088, 205 N.W. 972, 974 (1925) ("The evidence quite conclusively shows that appellants acted in concert, aiding and abetting each other both in the commission of the alleged assault and in the false imprisonment of appellee."). Thus, the jury found Naughton liable under the principles of aiding and abetting under section 876(b) of the Restatement (Second) of Torts.

---

[3]Likewise, the comments concerning liability for those found liable under paragraph (a) and (c) also impose joint and several liability. *See* Restatement (Second) of Torts § 876 cmt. *a*, at 316 ("Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts."); *id.* § 876 cmt. *e*, at 318 ("When one personally participates in causing a particular result in accordance with an agreement with another, he is responsible for the result of the united effort if his act, considered by itself, constitutes a breach of duty and is a substantial factor in causing the result, irrespective of his knowledge that his act or the act of the other is tortious.").

[4]We also recognize concert of action as a theory of *criminal* liability. *See, e.g.*, *State v. Jefferson*, 574 N.W.2d 268, 277 (Iowa 1997) (quoting Iowa Code § 703.2 which imposes joint criminal liability for those "acting in concert"); Iowa Code § 703.2. Moreover, while we have cited with approval section 876, "Persons Acting In Concert," of the Restatement (Second) of Torts many times, we typically refer to theories advanced under the section more specifically as "civil conspiracy" or "aiding and abetting." *See, e.g.*, *Ezzone*, 525 N.W.2d at 397–98 (noting plaintiff's theory of recovery makes the defendants liable "because they allegedly acted in concert," and that under the Restatement (Second) of Torts liability could be imposed because they were involved in a conspiracy as defined in paragraph (a), or because they aided and abetted each other as defined under paragraph (b) (citing *Tubbs v. United Cent. Bank*, 451 N.W.2d 177, 182 (Iowa 1990))).

The jury, however, only found Naughton twenty percent at fault. Under the CFA this presumably means Naughton cannot be jointly and severally liable. *See* Iowa Code § 668.4 (providing for joint and several liability only when persons are found at least fifty percent at fault). The remaining question, then, is whether Iowa's CFA trumps the theory of liability encompassed in section 876(b) of the Restatement (Second) of Torts. This question has never before been decided by this court.

In 1984 the General Assembly enacted Iowa's CFA. *See* Iowa Code ch. 668. The CFA provides a modified form of comparative fault and replaced the pure comparative fault principles we announced in *Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1982). *See Fox v. Interstate Power Co.*, 521 N.W.2d 762, 764 (Iowa Ct. App. 1994). Under the CFA, a plaintiff cannot recover damages if he or she is more than fifty percent at fault. Iowa Code § 668.3(1). The CFA also provides that joint and several liability attaches only to those persons—excluding the plaintiff, of course—who are found fifty percent or more at fault. *Id.* § 668.4. We have noted that this provision regarding joint and several liability "substantially modified" its common-law equivalent. *See Slager v. HWA Corp.*, 435 N.W.2d 349, 351 (Iowa 1989). The common law rule regarding joint and several liability allowed a plaintiff to recover the total judgment against any defendant who was liable—no matter how much fault was attributable towards him or her. *See id.* But under Iowa's CFA, this rule is modified so that a defendant is jointly and severally liable for economic damages only when their fault is fifty percent or more. *See* Iowa Code § 668.4; *Slager*, 435 N.W.2d at 351; *Estate of Pearson v. Interstate Power & Light Co.*, 700 N.W.2d 333, 348 (Iowa 2005) ("Our comparative fault act modified the common-law rule . . . .").

Because of changes like this, we have recognized that "Iowa's Comparative Fault Act represents a truly comprehensive and far-ranging modification and consolidation of Iowa tort law." *Johnson v. Junkmann,* 395 N.W.2d 862, 865 (Iowa 1986).

Although "comprehensive," the plain text of our CFA does not provide the answer to the question before us. This makes it unlike the statute involved in *Hurt v. Freeland,* 589 N.W.2d 551 (N.D. 1999), which specifically provided joint and several liability for concerted actors.[5] *Hurt,* 589 N.W.2d at 556–57. Nevertheless, we hold today that our CFA does not extinguish joint and several liability in circumstances such as these. Comment *d* to section 876 of the Restatement (Second) of Torts specifically requires joint and several liability when the third person gives substantial assistance. Under instruction No. 20, the jury obviously concluded that Naughton "gave substantial assistance." The Restatement (Third) of Torts: Apportionment of Liability says "[w]hen persons are liable because they acted in concert, all persons are jointly and severally liable for the share of comparative responsibility assigned to each person engaged in concerted activity." Restatement (Third) of Torts: Apportionment of Liability § 15, at 128 (2000). Specifically, comment *a* to this section provides:

---

[5]The North Dakota statute read:

> When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party, *except that any persons who act in concert* in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault.

*Hurt,* 589 N.W.2d at 556–57 (emphasis added) (quoting N.D.C.C. § 32-03.2-02).

> [T]he rule applies when governing law determines that concerted activity took place. . . .
>
> The provision for joint and several liability for persons engaged in concerted action applies regardless of the rule regarding joint and several or several liability for independent negligent tortfeasors in the jurisdiction. . . . [I]n jurisdictions that have modified or abolished joint and several liability, the rule adopted in this Section imposes joint and several liability on all persons engaging in concerted action and, to that extent, supersedes the abolition or modification of joint and several liability.

Restatement (Third) of Torts: Apportionment of Liability § 15 cmt. *a*, at 129. In this case the governing law—instruction No. 20 outlining the elements required for concerted action or aiding and abetting under section 876(b)—determined that concerted activity took place. As a result, and despite Iowa's CFA, Naughton is jointly and severally liable for the share of fault attributable to the concerted actors—i.e. Anderson and Naughton.[6]

---

[6]In its brief IMT argues that "Anderson and Naughton would be jointly and severally responsible for their negligence since the combined negligence was more than 50 percent of the total fault." Under our holding today IMT is correct that Anderson and Naughton are jointly and severally liable for *their* fault, but not because their combined fault was more than fifty percent. Instead, they are jointly and severally liable because they were concerted actors. What is significant in this case is that Anderson and Naughton were the only defendants found liable. In other words, no other defendants committed independent tortious acts. Thus, we express no opinion, and need not hold, whether circumstances involving both concerted actors and independent tortfeasors would require the concerted actors to be jointly and severally liable for the independent tortfeasor's percentage of fault. For example, we need not decide whether concerted actors would be jointly and severally liable for the entire fault assigned to all defendants in a situation where an independent third party had been assigned fifty-five percent fault, and concerted actors #1 and #2 had been assigned faults of thirty-five percent and ten percent, respectively (although the independent tortfeasor would obviously be jointly and severally liable for economic damages under Iowa's CFA, and, under our holding today, the concerted actors would at least be jointly and severally liable for forty-five percent of plaintiff's economic and non-economic damages). Notably, however, in this example the concerted actors' combined fault is less than the fifty percent threshold required for joint and several liability under Iowa's CFA. If the concerted actors' combined fault was above the fifty percent threshold, there is a better case for imposing joint and several liability on the concerted actors for the fault assignable to all defendants. This, however, could impose joint and several liability for a concerted actor who only was assigned a minimal percentage, and yet as a whole, the concerted actors' percentage of fault exceeded fifty percent. *See* Restatement

We do not believe the legislature's silence regarding concerted action means our CFA meant to override the common law rule regarding concerted action. Other courts have faced similar circumstances and come to the same conclusion. *See Woods v. Cole*, 693 N.E.2d 333, 337 (Ill. 1998) (holding apportionment statute inapplicable when persons act in concert under section 876 of the Restatement (Second) of Torts); *Kesmodel v. Rand*, 119 Cal. App. 4th 1128, 1145 (Cal. Ct. App. 2004) (holding apportionment statute that eliminated joint and several liability for non-economic damages inapplicable when "damages caused by joint tortfeasors who act in concert to cause the plaintiff's harm"). Moreover, we have previously created judicial exceptions to the CFA in the areas of intentional torts, dramshop actions, and fraud. *See Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 180–81 (Iowa 1990) (noting actions based on fraud, dramshop liability and intentional torts are not mentioned in the CFA, and holding such actions inapplicable to the CFA because, *inter alia*, "had the legislature intended for the [CFA] to cover such actions, it could have easily done so"). Of course, our holdings excluding the CFA from these causes of action are fundamentally different from what we hold today regarding concerted action. They are different because the jury may still apply the CFA and apportion fault in cases where concerted action is a theory of recovery. *See Slager*, 435 N.W.2d at 352

(Third) of Torts: Apportionment of Liability § 15 Reporters Note cmt. *a*, at 130–32 (noting "research has uncovered only one case that explicitly resolves the issue of whether defendants acting in concert are jointly and severally liable not only for their own shares of comparative responsibility but for the share of comparative responsibility apportioned to an independent tortfeasor as well" and citing to *Robinson v. June*, 637 N.Y.S.2d 1018 (Sup. Ct. 1996)). We need not decide this situation now, and will wait until such a case presents itself, or the legislature makes itself more clear. *See id.* § 15 cmt. *a*, at 129 ("This Restatement takes no position on whether a concerted-action tortfeasor is also jointly and severally liable for the share of comparative responsibility assigned to an independent tortfeasor who is also liable for the same indivisible injury.").

(noting Iowa's Dramshop Act "provides the exclusive remedy" and "[t]hus, no common-law cause of action . . . exists"). But if they find concerted action between defendants then each concerted actor is jointly and severally liable for the total responsibility apportioned to concerted actors, despite the fifty percent rule regarding joint and several liability in the CFA. Thus, unlike dramshop, fraud and intentional tort actions, we do not exempt concerted action theories of recovery from the CFA. Instead, we create a judicial exception regarding the applicability of the CFA's joint and several liability provisions where the legislature has not spoken.

In this same respect our holding today is fundamentally different from the decisions of the highest courts in Illinois and Maryland. In *Woods*, the Illinois Supreme Court stated:

> A determination that a tortfeasor has acted in concert with other individuals establishes a legal relationship with those individuals. By virtue of this relationship, the tortfeasor becomes liable for the actions of those with whom he acted in concert. . . . Thus, while the tortfeasors who act in concert in causing a plaintiff's injury may all engage in some affirmative conduct relating to that injury, the legal relationship which exists among them eliminates the possibility of comparing their conduct for purposes of apportioning liability. Indeed, if an apportionment of liability were permitted, the act of one tortfeasor would no longer be the act of all, and the essence of the doctrine of concerted action would be destroyed.

693 N.E.2d at 337. The court concluded that "it is legally impossible to apportion liability among tortfeasors who act in concert." *Id.* Because of this it held "the comparative negligence statute inapplicable to tortfeasors acting in concert." *Consumer Prot. Div. v. Morgan,* 874 A.2d 919, 953 (Md. 2005) (citing *Woods,* 693 N.E.2d at 337).

Maryland's highest court "agree[d] with the Illinois Supreme Court" and similarly found "[t]ortfeasors acting in concert legally are responsible for the tortious actions each commits. In such situations, there is no apportionment of liability between them." *Id.* The court cited to Prosser, who stated in cases of concerted action " '[t]he jury would not be permitted to apportion the damages.' " *Id.* (quoting William L. Prosser, *Joint Torts & Several Liability*, 25 Cal. L. Rev. 413, 414 (1936)). The court also noted commentary that "explained joint and several liability for concerted action as based on the difficulty of apportioning damages." Prosser, *Joint Torts & Several Liability*, 25 Cal. L. Rev. at 414 n.26 (citing John Henry Wigmore, *Joint-Tortfeasors & Severance of Damages; Making the Innocent Party Suffer Without Redress*, 17 Ill. L. Rev. 458, 458 (1923); Roy D. Jackson, Jr., *Joint Torts and Several Liability*, 17 Tex. L. Rev. 399, 420–21 (1939)).

We agree that apportioning fault among concerted actors is a difficult proposition. We, however, disagree with these courts in their ultimate position that it is legally impossible to apportion liability among concerted actors. This case is demonstrative that it is certainly *factually* possible: the jury found Naughton and Anderson guilty as concerted actors, and yet apportioned fault between them. Where this remains factually possible, we decline to say it is legally impossible where the legislature has not clearly said it is. *Accord Hurt*, 589 N.W.2d at 556–57 (quoting a North Dakota statute that allows the jury to apportion fault and yet also allows the court to enter judgment jointly and severally for the combined percentages of fault attributable to concerted actors). In other words, if the legislature had clearly said principles of joint and several liability regarding concerted actors cannot operate in conjunction

with our CFA, then we would certainly hold it is legally impossible to apportion liability among concerted actors. However, our legislature has voiced no opinion on the subject other than the directive in section 668.4: "In actions brought under this chapter, the rule of joint and several liability shall not apply to defendants who are found to bear less than fifty percent of the total fault assigned to all parties." Iowa Code § 668.4. For reasons we have already discussed, this does not eliminate joint and several liability among concerted actors for their concerted share of responsibility, and it says nothing about the legal impossibility of apportioning liability among concerted actors.

We additionally note that our holding makes Naughton and Anderson jointly and severally liable for both economic and non-economic damages. The common law rule providing for joint and several liability among persons acting in concert does not distinguish between economic and non-economic damages. *See* Restatement (Third) of Torts: Apportionment of Liability § 15, at 128. While our CFA makes this distinction by providing those found fifty percent or more at fault are only jointly and severally liable for plaintiff's economic damages, it does not change the common law result when persons act in concert. Thus, Naughton and Anderson are jointly and severally liable for Reilly's economic and non-economic damages. *See Kesmodel*, 119 Cal. App. 4th at 1142–45 (finding apportionment statute that limited defendants to several liability for non-economic damages was inapplicable when persons act in concert, and thus defendants acting in concert are jointly and severally liable for *all* damages).

**D.** **Naughton's Other Arguments Against Joint and Several Liability.**

Naughton's argument that joint and several liability does not attach because we have not recognized the concept of "joint drivers" is misplaced. Whether joint and several liability applies in this case, as it relates to Naughton, depends upon whether he was acting in concert with Anderson. Naughton does not have to be a "joint driver" to be acting in concert. Under jury instruction No. 20, which contained all the elements of concerted action under an aiding and abetting theory, the jury found Naughton guilty. As such, he was acting in concert and joint and several liability applies to the concerted responsibility.

Naughton's argument that the Restatement does not require joint and several liability is not only misplaced, but erroneous. Naughton bases his argument on section 17 of the Restatement (Third) of Torts: Apportionment of Liability, but fails to realize that section 17 only applies to "the independent tortious conduct of two or more persons." Restatement (Third) of Torts: Apportionment of Liability § 17, at 147. Concerted actors do not commit independent tortious conduct. IMT correctly points out in its brief that section 15 of the Restatement (Third) of Torts: Apportionment of Liability requires joint and several liability when persons act in concert. *See* Restatement (Third) of Torts: Apportionment of Liability § 15 cmt. *a*, at 129 ("The provision for joint and several liability for persons engaged in concerted action applies regardless of the rule regarding joint and several liability for independent negligent tortfeasors in the jurisdiction.").

Finally, Naughton is correct the cases in which other states have recognized joint and several liability for concerted actors are somewhat

distinguishable from the present case. Some, for example, dealt with intentional torts, *see Kesmodel*, 119 Cal. App. 4th at 1128, and Iowa has explicitly stated the principles of comparative fault do not apply to intentional torts, *see Tratchel*, 452 N.W.2d at 180–81. Thus, the argument goes, if this were a case of an intentional tort it would be easy to apply joint and several liability because such is the case in intentional torts—Iowa's CFA does not apply. The Restatement, however, makes no distinction between intentional and unintentional torts based on concerted action theories of recovery. The relevant inquiry is whether there is concerted action.

### III.  Whether a Limited Remand is Appropriate.

Because of our decision regarding the application of joint and several liability, we need not address Anderson and IMT's alternative argument for a new trial because the trial court failed to properly instruct the jury on an acting-in-concert or joint enterprise theory. We do, however, need to address Naughton's argument that, under these circumstances, a limited remand for a judgment entry is inappropriate.

Naughton believes such a remand is inappropriate because the effect of applying joint and several liability to Naughton directly contradicts what the jury was told in instruction No. 24. The relevant part of instruction No. 24 read:

> If you assign to a Defendant less than 50% of the total fault, that Defendant will only be liable to the extent of the percentage of fault assigned by you. I will order the defendants to contribute to the payment of damages awarded on the basis of the percentages of fault you insert in your answers to the questions at the end of these instructions.

Of course, the jury found Naughton only twenty percent at fault. Thus, the jury believed Naughton would not be held jointly and severally liable.

We have determined, however, that because Naughton was found liable under a concert of action theory, and because joint and several liability under such a theory has not been abrogated or modified by our CFA, Naughton is jointly and severally liable for the combined fault of the concerted actors.

Naughton correctly pointed out in his reply brief that neither Anderson nor IMT responded to this argument in their briefs. At oral argument, counsel for Anderson merely made the point that he does not think a new trial is necessary. He stated the legal implication of the jury's assessment of fault can be refined by the court.

Certainly the legal implications of a jury's assessment of fault can be refined by the court. For example, a district court may apply joint and several liability to a defendant when it is found fifty percent or more at fault under our CFA. *See* Iowa Code § 668.4. Thus, if a defendant is found fifty percent at fault, and the total fault excluding plaintiff's is ninety percent, the court "refines" the fifty percent attributable to said defendant to reflect that he or she is jointly and severally liable for the entire ninety percent fault attributable to those other than the plaintiff. This does not mean, however, that the district court may erroneously mislead the jury in how it may "refine" the percentages of fault the jury assigns. Such would be the case here if we were to remand the case with instructions to hold Naughton jointly and severally liable, despite the jury's instruction at trial that any defendant, including Naughton, would not be jointly and severally liable unless they were fifty percent or more at fault.

In *Reese v. Werts Corp.*, 379 N.W.2d 1, 4 (Iowa 1985), we reversed and remanded the case for a new trial for two reasons. One reason was

because the trial court gave "misleading advice" in its instructions to the jury. *Reese*, 379 N.W.2d at 4. Regarding this misleading advice, we stated:

> The jury was told that plaintiff's recovery would be reduced by the percentage that her negligence bore to the total negligence of the parties. If this were true plaintiff's recovery would have been $95,000 instead of $15,000. Having undertaken to instruct the jury on the effect of its determinations, we believe the court was required to instruct accurately.

*Id.* at 3. In this case, the trial court did instruct the jury upon the effect of its determinations, and as it was required to do under Iowa Code section 668.3. *See* Iowa Code § 668.3(5) ("If the claim is tried to a jury, the court shall give instructions and permit evidence and argument with respect to the effects of the answers to be returned to the interrogatories submitted under this section.").

In *Schwennen v. Abell*, 430 N.W.2d 98 (Iowa 1988), we approved of our holding in *Reese* and stated the following:

> A salient feature of our comparative fault legislation is the provision in section 668.3(5) that the jury must be made aware of the effect of its fault apportionment on the claimant's right of recovery. In *Reese*, 379 N.W.2d at 4, we found it to be reversible error for the court to fail to instruct on this matter or to give misleading instructions with respect thereto. The instructions given the jury in the present case were based on the premise that William could be subjected, as he was, to some allocation of causal fault. When William's fault is disregarded the interpolated verdicts suggested by Mary will have a substantially different effect on the Schwennen defendants and Floyd County than the jury would have perceived them to have under the trial court's instructions. This circumstance, we believe, requires that the apportionment of fault among the remaining parties must be tried anew.

*Schwennen,* 430 N.W.2d at 104. We likewise approved of our holding in *Reese,* and also *Schwennen,* in a more recent opinion. *See Wilson v. Farm Bureau Mut. Ins. Co.,* 714 N.W.2d 250, 260–61 (Iowa 2006).

In *Wilson* we made it clear that "[i]mplicit in both *Reese* and *Schwennen* was the fact that the erroneous and misleading instructions tainted the jury verdicts resulting in prejudice to the parties challenging the verdicts." 714 N.W.2d at 261. The same is the case here. Under our holding, which changes the effect of the verdict and which Naughton challenges, Naughton suffers prejudice because joint and several liability applies. As a result, the case must be tried anew.

## IV.    Naughton's and the Reillys' Cross-Appeal.

Because of our holding regarding the application of joint and several liability, as well as the necessity for a remand in this case, the only remaining arguments that could require our disposition are those that might impact the new trial on remand. We find the only arguments that may have such an impact are Naughton's argument that jury instruction No. 20 inaccurately stated the law, and the Reillys' argument that substantial evidence does not support the jury's finding that Reilly was twenty percent at fault.

Preliminarily, we observe that Naughton may not have preserved this issue for appeal. Naughton did object to instruction No. 20, but did not argue it misstated the law. *See Collister v. City of Council Bluffs,* 534 N.W.2d 453, 454 (Iowa 1995) ("We consider only the objections to the instructions that were properly raised in the district court proceedings."). Nevertheless, even assuming this issue was preserved for appeal, instruction No. 20 accurately stated the law.

Aiding and abetting, as a theory of recovery and as embodied in instruction No. 20, does not require Naughton to consciously desire Anderson to lose control of the vehicle or that Naughton consciously wanted Anderson to fail in his duty to look out. IMT correctly points out that Naughton has confused the concepts of aiding and abetting in tort and aiding and abetting the violation of criminal statute. In *Heick*, we said aiding and abetting under Iowa Code section 703.1—a criminal statute—required that there be evidence the defendant " 'participate[d] in it as something that he wishes to bring about.' " 561 N.W.2d at 54 (quoting *State v. Lott*, 255 N.W.2d 105, 108 (Iowa 1977), *overruled by State v. Allen*, 633 N.W.2d 752, 756 (Iowa 2001) (overruling the holding in *Lott* "that one who aids only the transferee of drugs cannot be found guilty of delivery")). This is not the case when the theory is advanced in tort. To aid and abet a violation of a rule of the road, all that is required is that there be "substantial evidence that [the defendant] encouraged or assisted [another] in committing these violations." *Id.* at 53; *accord* Restatement (Second) of Torts § 876 cmt. *d,* at 317. This does not require that Naughton consciously desire or want Anderson to lose control of the vehicle or fail to keep a proper lookout. It simply requires Naughton to know Anderson's actions were tortious and that Naughton gave substantial assistance. *See* Restatement (Second) of Torts § 876 cmt. *d,* at 317 (imposing liability on the person who aids and abets regardless of whether the principal "knows his act is tortious," but only when the person who aids and abets gives substantial assistance and knows the act, or intended act, is tortious). This is exactly what instruction No. 20 required, and it therefore correctly stated the law.

We do not address the Reillys' claim on cross-appeal that there was insufficient evidence to support the finding by the jury of his fault. The Reillys did not preserve error on this claim at trial, and they are not entitled to challenge the sufficiency of the evidence to sustain the finding of Reilly's fault for the first time on appeal from a jury verdict. *See Meier v. Senecaut III*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *cf. In re A.R.*, 316 N.W.2d 887, 888, 889 n.2 (Iowa 1982) ("In ordinary civil cases *tried to the court*, the sufficiency of the evidence may be challenged on appeal even though not raised below." (Emphasis added.)); Iowa R. Civ. P. 1.904(2). Reilly's allocation of fault, however, must be determined anew on remand.

The new trial on remand shall be limited to the issues of fault. The damages upon retrial shall be the damages established by the jury at the initial trial. *See Schwennen*, 430 N.W.2d at 104.

**V.    Conclusion.**

The jury found Naughton liable as a concerted actor, and as such he is jointly and severally liable for the total share of responsibility among the concerted actors. Our CFA does not change this result. Nevertheless, this case must be remanded for a new trial because instruction No. 24 did not allow such a result. Moreover, instruction No. 20 was an accurate statement of the law. Finally, the Reillys' failed to preserve error on their argument in their cross-appeal. The remaining issues either do not require our determination because of our holding, or are not addressed because they were not preserved for appeal or are meritless.

**REVERSED AND REMANDED.**

All justices concur except Hecht and Appel, JJ., who take no part.